UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAMMY HELBIG,<br><br>                              Plaintiff,<br><br>         -against-<br><br>EDGARD EL CHAAR D.D.S. P.C., EDGARD EL CHAAR, and ENIS GURI,<br><br>                              Defendants. | Civil Action No.:<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff, Tammy Helbig ("Plaintiff"), by and through undersigned counsel, Valiant Law, hereby complains about Defendants, Edgard El Chaar D.D.S. P.C. (the "Company"), Edgard El Chaar ("El Chaar"), and Enis Guri ("Guri") (all defendants collectively referred to as "Defendants") and alleges, as follows:

## PRELIMINARY STATEMENT

*"I wish you were a man…*
*I prefer working with men because they are not as emotional as women."*

1.     Plaintiff is a hard-working woman, who invested the majority of her professional life in dentistry.  Not even a cancer diagnosis in 2009 would deter her.

2.     In 2022, Plaintiff began working for Defendant Dr. Edgard El Chaar after he purchased the practice from Langer and Langer, for whom Plaintiff worked since 1996.

3.     Upon acquiring the practice, El Chaar assured his new employees the transition would be seamless.  Thus, Plaintiff reasonably expected to conclude her career working at the same facility she had dedicated herself tirelessly to for the last nearly three (3) decades.

4.     Sadly, Plaintiff's expectations were soon dashed once El Chaar's true discriminatory animus wore through the polite façade.  Indeed, comments like the above were soon commonplace and underscored a true disdain and dislike for female assistants.

1

5.      Still, Plaintiff endeavored to push through hostility and abuse, keep her head down and work hard.  Among other things, Plaintiff needed the salary and healthcare insurance due to her ongoing battle with cancer.

6.      Around early 2022, the Langers fulfilled their contractual obligations and officially departed the facility and practice.

7.      In or about May of 2022, El Chaar's practice manager, Defendant Enis Guri ("Guri"), questioned Plaintiff about El Chaar's disposition and manner of practice in the patient rooms.

8.      Plaintiff nervously disclosed El Chaar's aggressive managerial style, emphasizing his proclivity for shouting disparaging language at her and other female employees, as well as the fact that he often performed procedures without sterile gloves.

9.      The following week Plaintiff was summoned to Guri's office where El Chaar berated and yelled at her, in the presence of Guri who did nothing to prevent this frightening and unlawful outburst.

10.     Scared, Plaintiff indicated to Guri her intention to leave the practice due to El Chaar's concerning behavior, but Guri persuaded Plaintiff to remain at the practice by making false assurances that El Chaar would not behave in such a manner going forward.  Plaintiff reluctantly acquiesced, in large part because she feared losing her healthcare insurance.

11.     Unfortunately, El Chaar's campaign of harassment continued unbated.

12.     In or around September of 2024, following a mix-up with a patient's x-rays, El Chaar lambasted and verbally harassed Plaintiff for days on end, yelling at her in the presence of patients and throwing items, including a syringe, around the patient rooms.

13.     What is worse, during the course of treatment on one patient, El Chaar physically slapped Plaintiff's hand away from a patient she was actively working on.

2

14.     Plaintiff was shocked and increasingly concerned about her safety.  She bravely approached El Chaar about his behavior and disclosed her fear.

15.     El Chaar immediately began yelling at Plaintiff, putting her in immediate apprehension of another assault given their close proximity.  Just as suddenly as he erupted, El Chaar turned and walked away.

16.     Shocked and scared, and unsure of where else to turn, Plaintiff complained again to Guri.  Appallingly, Guri coldly advised Plaintiff *"if you are unhappy, you are free to leave."*

17.     While Plaintiff pleaded with Guri to help since she did not want to lose her job and was concerned about healthcare should she lose her insurance, Guri then directed Plaintiff to leave the office, signaling the end of her employment.

18.     Indeed, after working tirelessly for nearly three (3) decades at the facility, even during a battle with cancer, Plaintiff found herself left out in the proverbial cold, with no income or health insurance.

19.     El Chaar's degrading and alarming conduct traumatized and scarred Plaintiff.  Courageously, Plaintiff now seeks to hold Defendants responsible for their unlawful behavior.

20.     Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*  ("Title VII"), the New York State Human Rights Law, NYS Executive Law §§ 296 et seq. ("NYSHRL"), the New York City Human Rights Law, New York City Administrative Code §§ 8-107 et seq.  ("NYCHRL"), New York Labor Law ("NYLL") among other laws as set forth below.

**PARTIES**

21.     Plaintiff is an individual who, at all relevant times, resides in the County of Queens, New York.

22.     Upon information and belief, Defendant Edgard El Chaar, D.D.S., P.C.  is a Domestic Professional Service Corporation duly authorized to conduct business in accordance

3

with laws of the State of New York, with a principal place of business located at 130 East 35th Street, New York City, New York, 10016.

23.     Upon information and belief, Defendant Dr. Edgard El Chaar is an individual who, at all relevant times, was and is a resident of the State of New York and is the principal and owner of Edgar El Chaar, D.D.S., P.C., and had supervisory authority over Plaintiff.

24.     Upon information and belief, Defendant Enis Guri is an individual who, at all relevant times, was and is a resident of the State of New York, and was the practice manager for Edgar El Chaar, D.D.S., P.C., and had supervisory authority over Plaintiff.

25.     Defendants were in charge of and had control over Defendants' policies and procedures with respect to its unlawful policies, acts and practices alleged herein, including but not limited to, payroll, timekeeping, scheduling and otherwise running the business.  The Defendants share a common commercial business purpose, address and location.

26.     At all relevant times, Plaintiff was an "Employee" of Defendants including, but not limited to, the definition of the term under Title VII, the NYSHRL, NYCHRL, NYLL and other applicable laws below.  The harm to Plaintiff alleged herein occurred within New York City and New York State.

27.     At all relevant times, Defendants were an "Employer" and supervisor of Plaintiff, including, but not limited to, the definition of the term under Title VII, the NYSHRL, NYCHRL, NYLL and other applicable laws below.

## JURISDICTION AND VENUE

28.     The Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under the laws of the United States, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state and local laws.

29.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff and Defendants resides within the jurisdiction of this District, and/or Defendants have sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced, and because a substantial part of the events and/or omissions giving rise to this action, occurred in this district.

## PREREQUISITES

30.    On or about March 27, 2025, Plaintiff filed a charge of sex and gender-based discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC").

31.    On or about May 23, 2025, Plaintiff received a Notice of Right to Sue from the United States Department of Justice, Civil Rights Division.

32.    Plaintiff has timely filed this complaint within 90 days of her receipt of the Notice of Right to Sue.

33.    Any and all other prerequisites to the filing of this suit have been met.

## MATERIAL FACTS

### *Plaintiff's Employment with Edgard El Chaar DDS P.C.*

34.    Plaintiff began her employment as a dental surgical assistant with Langer & Langer in 1996, a practice owned by Laureen and Burton Langer (the "Langers").  Throughout her long tenure, Plaintiff was regarded as a high value employee, even throughout her challenging battle with cancer that began in 2009.

35.    In or about 2022, the Langers sold their practice to El Chaar.

36.    As a part of the contract with Plaintiff's former employers, the Langer's remained a part of the business to facilitate the transition between the parties.  During this period Plaintiff, who was long-tenured and well respected by the Langers, believed her job was secure.

37.    Although it was not evident at first, a place that had once felt like a second home to Plaintiff soon became a living nightmare.

***With the Departure of the Prior Owners, Plaintiff was Immediately Subjected to Discrimination, Retaliation and a Hostile Work Environment***

38.    In or about May of 2022, the Langers officially departed the facility, at which time, El Chaar outwardly assured his employees the transition would be seamless, and it would be business as usual.

39.    Plaintiff and others quickly learned this was far from the truth.  By way of example only, upon taking over the practice, El Chaar cancelled several employee benefits, such as long-term and short-term disability coverage.

40.    What is worse, following this honeymoon phase, El Chaar's disposition toward Plaintiff shifted altogether.  Rather than the largely professional interaction in the treatment rooms, El Chaar was prone to unpredictable bouts of anger, yelling and throwing objects at Plaintiff, like syringes and other tools of the practice.

41.    Notwithstanding this overt hostility, and on occasions too numerous to count, El Chaar frequently disparaged and insulted Plaintiff with gender-based comments like ***"I wish you were a man"*** and ***"I prefer working with men, because they are not as sensitive as women"***.

42.    Indeed, El Chaar often admonished Plaintiff that she was *"too sensitive"* and singled her out during office meetings, as witnessed by Plaintiff's co-workers.

***Plaintiff's Early Complaints Were Met with Immediate Retaliation.***

43.    In or around May of 2022, Plaintiff was approached by Enis Guri ("Guri"), El Chaar's office manager.  During the conversation, Guri questioned El Chaar's methods of managing the office and his preferences when performing procedures.

44.    At this time, Plaintiff disclosed that on occasions El Chaar performed procedures on patients without using sterile gloves.

45.     Approximately a week later, on or around May 13, 2022, Guri emailed Plaintiff and requested she come to El Chaar's office the following Monday.

46.     Plaintiff agreed and the following Monday, May 16th, 2022, met with El Chaar and Guri.

47.     Once there, El Chaar immediately began berating Plaintiff and accused her of "sabotaging him", all the while yelling at her.

48.     Guri did nothing to intervene or otherwise prevent the continued harassment and retaliation against Plaintiff.  Plaintiff pleaded with El Chaar to stop, to no avail.

49.     Appalled and defeated, Plaintiff informed El Chaar that she could not bear the abusive treatment and informed him of her intent to leave the practice.  Tellingly, El Chaar ignored her pleas and simply told her to get out of the office.

50.     Later, Plaintiff approached Guri and reiterated her intentions to quit due to El Chaar's conduct.  Guri assured her that she would speak with El Chaar and the harassment would stop.  Based on Guri's assurance, and her need for a job and healthcare to treat her cancer, Plaintiff reluctantly agreed to continue working.

51.     Unfortunately, Guri's empty promises turned out to be mere lip service, as El Chaar's conduct not only continued unabated, but grew increasingly more intense, irrational and unpredictable.

52.     Every day, Plaintiff steeled herself and performed her job to the best of her ability since termination and a loss of healthcare insurance had potentially catastrophic consequences for someone battling cancer.

53.     For this reason, even in the face of El Chaar's campaign of discrimination, bullying, and hostility, Plaintiff remained.  Still, even Plaintiff had a breaking point.

### *Plaintiff is Blamed for an X-Ray Mix-up and El Chaar's Rage and Abuse Reached its Zenith*

54.    On or around September 18, 2024, El Chaar and Plaintiff were performing a procedure on a patient that was particularly difficult.  During the procedure El Chaar became frustrated and enraged and directed his anger towards Plaintiff.

55.    Unprovoked, El Chaar threw a contaminated dental bone rongeur, which had just been used in the patient's mouth, in Plaintiff's direction, narrowly missing her as she moved out of the way.

56.    Later, outside of El Chaar's presence, Plaintiff voiced her concerns to the anesthesiologist who had been present during the exchange.  Unfortunately, the anesthesiologist simply made excuses for El Chaar's conduct.

57.    This continued into the following day, on or about September 19, 2024, when El Chaar requested Plaintiff's assistance with a patient.  When she entered the treatment room, El Chaar asked for a syringe of peroxide, which Plaintiff handed it to him.  El Chaar looked at the syringe and immediately threw it back in Plaintiff's direction, claiming he asked for something different.

58.    Worse, El Chaar then made repeated requests for the syringe, only to shockingly toss each one back at Plaintiff.

59.    Later that day, El Chaar approached Plaintiff after he discovered that a patient's x-rays had been labeled incorrectly.  Plaintiff informed El Chaar that she had not worked on those particular x-rays, but still El Chaar became enraged, and began aggressively berating Plaintiff.

60.    Later the same day, Plaintiff and El Chaar were performing a procedure on the same patient.  Without warning, El Chaar aggressively slapped Plaintiff's hand away from the patient's mouth.

61.    Shocked and fearful of El Chaar's increasingly erratic and harmful behavior, and weary of complaining to Guri, Plaintiff raised her concerns with another doctor at the practice, Dr.

Castillo. Sadly, Dr. Castillo barely acknowledged her complaints and did nothing to protect Plaintiff.

62. Seemingly without a viable alternative, Plaintiff summoned the courage to confront El Chaar and pleaded with him to stop the aggressive and abusive behavior.

63. Not surprisingly, this only angered El Chaar who got very close to and began yelling in Plaintiff's face, no doubt intending to scare her into submission.

64. El Chaar abruptly stopped, uttered something to the effect of "I can't deal with this", called Guri, and demanded Plaintiff speak to Guri on the phone.

65. Fearful for her safety, Plaintiff hurriedly left the room.

66. The following Monday, September 23, 2024, Guri brought Plaintiff to her office and questioned her about El Chaar's assault in the treatment room and the conversation that followed. Plaintiff bravely recounted the events, the discriminatory comments, belittling, abusive and harassing conduct and her fears–for both her physical safety and losing her job.

67. Sadly, these complaints fell upon deaf ears, as Guri simply brushed off Plaintiff's concerns, and instead made excuses for El Chaar stating that he had been under a lot of stress at the time.

68. Even worse, rather than providing Plaintiff with any assistance Guri simply informed Plaintiff that if she was unhappy working for El Chaar she was welcome to leave. Indeed, rather than provide Plaintiff with the support or help that she so desperately needed, Guri openly suggested that Plaintiff quit.

69. In response and obviously upset and concerned about her ability to access health insurance following a voluntarily resignation, Plaintiff pleaded with Guri for help. In reply, Guri simply continued to question why Plaintiff would not just leave.

70. Finally, upon realizing Plaintiff was not going to quit, and with no intention of helping, Guri instructed Plaintiff to leave, thereby terminating her employment.

71.    Indeed, after a successful nearly three-decade long career, Plaintiff found herself left out in the cold with no income and no access to healthcare she desperately needed as part of her cancer treatment.

72.    In the end, and while these are just some of the examples of the discrimination, harassment and retaliation Plaintiff endured, Defendants' actions were intended to, and did, create a hostile work environment, replete with discrimination, retaliation and disparate treatment that no reasonable person should or would tolerate.

73.    As result of Defendants' actions, Plaintiff suffered unbearable humiliation and degradation.  Plaintiff was dehumanized and left with severe emotional harm.

74.    As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, she suffered and continues to suffer severe emotional and physical distress.

75.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

76.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages.

### AS A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS<br>DISCRIMINATION IN VIOLATION OF TITLE VII

77.    Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

78.    42 USC §2000e (Title VII) makes it unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or, to limit, segregate, or classify his or

her employees or applicants for employment in any way which would deprive or tend to deprive any individual or employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin. 42 USC §2000e-2.

79.    At all relevant times, Defendants were covered employers under Title VII and participated in discriminatory and unlawful conduct.

80.    At all relevant times, Plaintiff was a qualified employee as defined by Title VII, and she satisfactorily performed the duties required by the position she held with Defendants.

81.    Defendants violated the sections cited herein by creating and maintaining discriminatory working conditions, a hostile work environment, and otherwise discriminating and engaging in disparate treatment against Plaintiff because of her sex.

82.    The discrimination and harassment Plaintiff suffered while employed with Defendant was severe and pervasive, punctuated by yelling, physical assaults and perpetual apprehension of same, all of which was unwelcome and would be offensive to a reasonable person. The discrimination that Plaintiff suffered while employed by Defendant severely affected the terms and conditions of her employment.

83.    Defendants violated the section cited herein as set forth.

### AS A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS
### RETALIATION IN VIOLATION OF TITLE VII

84.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

85.    As set forth herein, Defendants subjected Plaintiff to discrimination, a hostile work environment, and an atmosphere of adverse employment actions and decisions because of her sex in violation of Plaintiff's statutory and constitutional rights.

86.    Plaintiff complained to Defendants multiple times regarding the discrimination she was subjected to during her employment with Defendants.

87.     Defendants failed to carry out an unbiased and thorough investigation into the merits of Plaintiff's complaints of discrimination and hostile work environment.

88.     In response to Plaintiff's complaint, Defendants subjected Plaintiff to a series of adverse employment actions including but not limited to subjecting her to a hostile work environment, and ultimately termination.

89.     Accordingly, Defendants unlawfully and without cause, retaliated against Plaintiff as a direct result of her complaints of discrimination and hostile work environment.

90.     As a direct and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered extreme emotional anguish, outrage, anxiety about her future, harm to her employability and career trajectory, professional reputation, and disruption to her personal life.

91.     Accordingly, Defendants retaliated against Plaintiff in violation of her statutory rights as guaranteed by Title VII.

### AS A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS
### DISCRIMINATION IN VIOLATION OF THE NYSHRL

92.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

93.     New York State Executive Law § 296 provides:

> "It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, *sex*, disability, predisposing genetic characteristics, familial status, marital status or status as a victim of domestic violence, of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." (emphasis added).

94.     Defendants violated the section cited herein by creating and maintaining discriminatory working conditions, including but not limited to, maintaining a hostile work environment by ratifying the conduct of El Chaar in failing to curb the discriminatory behavior,

12

ensure a safe workplace, pressuring Plaintiff's resignation, and otherwise discriminating against Plaintiff and subjecting her to disparate treatment because of her sex.

95.    Defendants violated the statute as set forth herein above.

## AS A FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
## RETALIATION IN VIOLATION OF THE NYSHRL

96.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

97.    New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because she has opposed any practices forbidden under this article."

98.    By complaining to Defendants, of El Chaar's unlawful harassment, Plaintiff engaged in protected activities.

99.    In response to Plaintiff's complaints, Defendants subjected Plaintiff to numerous adverse employment actions including but not limited to, subjecting her to a discriminatory workplace, inferior terms and conditions of employment, and wrongfully terminating her.

100.    Accordingly, Defendants engaged in unlawful retaliatory practices by retaliating against Plaintiff because of her opposition to unlawful employment practice in the workplace.

## AS A FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
## AIDING AND ABETTING DISCRIMINATION IN VIOLATION OF THE NYSHRL

101.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

102.    New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

103.    New York State Executive Law § 292(a) defines "person" to include "one or more individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers."

104.    Defendants participated in, condoned, encouraged, and approved the conduct giving rise to the unlawful conduct alleged herein, including but not limited to discrimination, harassment, and retaliation.

105.    Defendants violated the section cited herein as set forth above.

**AS A SIXTH CAUSE OF CATION AGAINST ALL DEFENDANTS**
**DISCRIMINATION IN VIOLATION OF THE NYCHRL**

106.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

107.    The New York City Administrative Code § 8-107(1) provides that:

> "it shall be an unlawful discriminatory practice: (a) for an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, *gender*, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or immigration or citizenship status…of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." (emphasis added).

108.    Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code § 8-107(1)(a) by creating and maintaining discriminatory working conditions, harassment, and otherwise discriminating against the Plaintiff and creating a hostile work environment, subjecting plaintiff to inferior terms, conditions, and privileges of employment, and engaging in disparate treatment against Plaintiff because of her actual or perceived gender.

**AS A SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**RETALIATION IN VIOLATION OF THE NYCHRL**

109.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

14

110.    The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer … to discharge … or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter…"

111.    Defendants violated this section by retaliating against Plaintiff for her protected activities as set forth above.

**AS AN EIGHTH CAUSE OF ACTION**
**AIDING AND ABETTING DISCRIMINATION UNDER THE NYCHRL**

112.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

113.    New York City Administrative Code Title § 8-107(6) provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

114.    Defendants participated in, condoned, encouraged, and approved the conduct giving rise to the unlawful conduct alleged herein, including but not limited to, discrimination, harassment, and retaliation.

115.    Defendants violated the section cited herein as set forth.

**AS A NINTH CAUSE OF ACTION AGAINST**
**EDGARD EL CHAAR, DDS, P.C. AND EDGARD EL CHAAR**
**WHISTLEBLOWER RETALIATION IN VIOLATION OF NYLL §740**

116.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

117.    New York Labor Law § 740 prohibits an employer from taking any retaliatory action against an employee, because such employee "discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee, reasonably believes is in violation of law, rule, or regulation or… objects to, or refuses to participate in any such activity, policy, or practice."

15

118.    Further, New York Labor Law § 740 prohibits an employer from retaliating against an employee who has disclosed or threatened to disclose to a supervisor or public body an activity, policy or practice of the employer that the employee believes poses a substantial and specific danger to the public health or safety.

119.    Plaintiff reasonably believed Defendants' actions, policies, and/or practices were violations of the law, rule, and/or regulations.  Plaintiff reasonably believed that both El Chaar's words and physical acts constituted sexual harassment which violated both company policies and the law.  Further, Plaintiff was reasonably afraid both for her own safety and the safety of other employees and patients due to Defendants' failure to take action against El Chaar.

120.    Plaintiff complained about and/or disclosed such actions to Defendants.

121.    As a direct result of her complaints, Plaintiff was subjected to adverse employment actions as alleged herein, and ultimately terminated, in retaliation for her protected activities and in violation of New York State Labor Law §740.

122.    Defendants violated the section cited herein by retaliating against the Plaintiff for her complaints of Defendants' conduct which Plaintiff reasonably believed violated New York State Laws, Federal Laws, and regulations.

### AS A TENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### RETALIATION IN VIOLATION OF NEW YORK LABOR LAW § 215

123.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

124.    NYLL § 215(1)(a) provides, in pertinent part:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint…that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter…

16

125.    The law imposes a non-delegable duty on employers to protect the health and safety of employees and mandates: "All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places." NYLL §200.

126.    As set forth herein, Plaintiff made several complaints, including, but not limited to, her complaints about El Chaar's increasing erratic and violent behavior, which Plaintiff reasonably and in good faith believed violated sections of the NYLL.

127.    Defendants retaliated against Plaintiff due to her protected activities, specifically her complaints, subjecting her to a hostile work environment, increased and further adverse conditions of employment including but not limited to violent and aggressive behavior.

128.    As such, Defendants have violated this section of the NYLL.

129.    As such, Plaintiff is entitled to all appropriate relief, including but not limited to, lost compensation, back pay, front pay, liquidated damages, compensatory damages, pain and suffering, costs and attorneys' fees.

## JURY DEMAND

130.    Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests a judgment against Defendants as follows:

A.    Declaring that the Defendants engaged in unlawful employment practices prohibited by Title VII, the NYCHRL, NYSHRL, and NYLL in that the Defendants injured, harassed, discriminated, and retaliated against Plaintiff;

B.      An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with it, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C.      Awarding damages to the Plaintiff for any lost wages and benefits, past and future, back pay and front pay, liquidated damages, and interest, resulting from Defendants' unlawful employment practices, against Plaintiff, or any jointly or severally liable entity or person;

D.      Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering and injury to reputation against Defendants, or any jointly or severally liable entity or person;

E.      Awarding Plaintiff civil penalties and liquidated damages pursuant to New York Labor Law.

F.      Awarding Plaintiff all damages sustained as a direct and proximate result of Defendants' breaches of any agreements and/or otherwise unlawful conduct alleged herein;

G.      Awarding Plaintiff Punitive Damages;

H.      Awarding Plaintiff all interest, attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

I.      Awarding Plaintiff such other and further relief as the Court may deem equitable. just and proper.

Dated:   June 3, 2025
         White Plains, New York

                                        Yours, etc.

                                        VALIANT LAW

                                        By:   */s/ Daniel Folchetti*
                                                Joseph Jeziorkowski, Esq.
                                                Daniel Folchetti, Esq.
                                              *Attorneys for Plaintiff*
                                              *Tammy Helbig*
                                              2 Westchester Park Dr., Suite 205
                                              White Plains, New York 10601
                                              914-730-2422
                                              jjj@valiantlaw.com
                                              dcf@valiantlaw.com